**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**KARLA LYNN SMITH,**

               **Plaintiff,**

   **v.**                             **Civil Action 2:20-cv-2886**
                                        **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

               **Defendant.**

## OPINION AND ORDER

Plaintiff, Karla Lynn Smith, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties in this matter consented to the Undersigned pursuant to 28 U.S.C. § 636(c). (Docs. 8, 9). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff protectively filed her current applications for DIB and SSI on June 15, 2017, alleging that she was disabled beginning November 2, 2016. (Tr. 15). After her applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on May 15, 2019. (Tr. 41–75). The ALJ denied benefits in a written decision on July 2, 2019. (Tr. 12–40). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on June 3, 2020 (Doc. 1), and the Commissioner filed the administrative record on October 22, 2020 (Doc.

14). Plaintiff filed her Statement of Errors (Doc. 15) on December 7, 2020, and the Commissioner filed an Opposition (Doc. 17) on January 21, 2021. Plaintiff filed her Reply on February 5, 2021 (Doc. 18). Accordingly, this matter is now ripe for consideration.

## A. Relevant Hearing Testimony

The ALJ summarized the testimony from Plaintiff's hearing:

The [Plaintiff] testified [ ] that she lives in a home with her children. She stated that her children all have cellular phones and noted that if she has a bad day, they call their father, who comes to help them. She stated her children are 12 and 13 years old. The [Plaintiff] reported that she does have custody of her children. The [Plaintiff] reported having a valid driver's license, but stated she last drove approximately a year prior to her hearing. The [Plaintiff] stated that she gets rides from people or rides the bus. She stated that she is able to obtain medical transportation for free to her physician appointments. She explained when she needs to go to the grocery store, her children's father will take her. She testified that her children help her a lot in the home.

The [Plaintiff] noted she last attended school in the tenth grade and did not obtain a GED. The [Plaintiff] reported she previously worked as STNA. She noted that she was terminated from her position and could not find other positions as a STNA, because of her bipolar condition.

The [Plaintiff] reported that she feels her condition has changed since 2016 because she is more aggressive and does not want to be around anyone. She explained she is scared to go outside unless someone comes with her to help her. She stated her feelings are so up and down and her memory is poor. She reported that they give her different medications, but stated that her medications change. The [Plaintiff] testified that her symptoms and deterioration was triggered by her fight with her mother. The [Plaintiff] stated that she sees a counselor once a month, but noted that her treatment is going to change and she will be going every two weeks. The [Plaintiff] testified that the increase in treatment is to better track her symptoms of depression and medication. The [Plaintiff] testified that she needs reminders to take her medications. She noted that even with medications, she does not feel better.

The [Plaintiff] reported that she uses a pill machine with a timer to take her prescribed medications. However, sometimes she stated she does not take all of the [p]ills. The [Plaintiff] testified that she has not taken her medication in some time, because she has no one to help her sort her pills. The [Plaintiff] testified that she does not listen to her doctors because she does not remember. She admitted that she does not write things down, but should start. She testified that she was working to obtain a subsequent home health aide.

The [Plaintiff] testified that she does not have the patience to work a full-time job. She reported that she is unable to control her feelings. She reported hearing voices. She stated her own family does not want her around. The [Plaintiff] stated that her adult daughter did not even call her to tell her she had a child.

(Tr. 25–26).

While the [Plaintiff] admitted she should write things down, she did not write down her medication administration. She reported confusion associated with taking her medications; however, the record does support she was noted to have intact memory and orientation when compliant with all medications, including her mental health medications, as discussed below. Further, while she testified her daughter was smart and that she received assistance from her sister, her children's husband, and her daughter, she did not indicate that any of the individuals routinely assisted the [Plaintiff] with medication administration or filling her pillbox.

(Tr. 27).

## B. Relevant Medical Evidences:

Because Plaintiff attacks only the ALJ's treatment of her mental impairments, the Court

focuses on the same. The ALJ summarized the relevant medical evidence:

[ ]The record documents the [Plaintiff] was diagnosed with anxiety, depression, bipolar, schizoaffective disorder, and PTSD. The [Plaintiff] was prescribed Zoloft medication for her conditions and symptoms (Exhibit B8F/46). During May 2016, the [Plaintiff] reported some agoraphobic symptoms and endorsed panic (Exhibit B2F/28). Despite referrals to mental health professionals, the [Plaintiff] reported that she is scared to talk with them (Exhibit B2F/28). The [Plaintiff] noted that at times she is hyper and at other times she is lethargic (Exhibit B2F/28). In June 2016, the [Plaintiff] showed no slurred speech, maintained good insight, showed normal psychomotor activity, and despite reports of being sad, evidenced no suicidal or homicidal ideation (Exhibit B8F/39). While the [Plaintiff] experienced some breakthrough symptoms, the [Plaintiff] required no emergency treatment for mental symptoms and reported no hallucinations (Exhibit B2F/24). She reported that taking medications helped her symptoms, but did not take away the shadows she would see (Exhibit B2F/24). In August 2016, she was observed to have good hygiene, maintained appropriate affect, and was described as both content and happy (Exhibit B9F/16). During September 2016, the [Plaintiff] reported anxiety and mood symptoms (Exhibit B2F/13). The [Plaintiff] was prescribed additional mental medications, including Seroquel, Hydroxyzine, Fluoxetine, and Risperidone (Exhibit B8F/10). With the use of the medications, she was observed to have normal mood, affect, and behavior (Exhibit B8F/10). In November 2016, the [Plaintiff] reported decreased concentration and increased forgetfulness (Exhibit B1F/15).

She reported in December 2016, that the holidays evidenced increased depression and she noted financial stressors (Exhibit B1F/13).

During early 2017, the [Plaintiff] reported her mood was down due to her physical health and suffering (Exhibit B1F/11). In February 2017, the [Plaintiff] reported increased anger and was tearful (Exhibit B1F/9). She admitted at that time, she had gone without medications for approximately three months (Exhibit B1F/9). Despite a lack of medication, she endorsed no suicidal or homicidal ideation (Exhibit B1F/9). In March 2017, the [Plaintiff] reported having family stress, but felt her mood was better (Exhibit B1F/7). She was more motivated, was sleeping good, and showed normal thought processes and associations (Exhibit B1F/7). She was oriented with a full affect and euthymic mood (Exhibit B1F/7). In May 2017, the [Plaintiff] reported engaging more with her family, sleeping better, and even losing weight (Exhibit B1F/5). During June 2017, the [Plaintiff] noted that she was caring for herself better (Exhibit B1F/3). She felt more motivated (Exhibit B1F/3). She admitted some anxiety in public, but felt Prozac was working as she experienced a decrease in her crying (Exhibit B1F/3). She noted Seroquel was helping with her sleep (Exhibit B1F/3). The [Plaintiff] admitted at times seeing shadows, but denied auditory hallucinations (Exhibit B1F/3). The [Plaintiff] was noted to have a schizoaffective disorder and was continued on medications, Prozac and Seroquel (Exhibit B1F/2).

(Tr. 28–30).

In July 2017, the [Plaintiff] reported family issues, but admitted she was doing well on her medications (Exhibit B1F/1). She maintained normal thought processes and logical thoughts (Exhibit B1F/1). While depressed and irritable, there was no impairment in her judgment or her memory (Exhibit B1F/1). She also evidenced an average fund of knowledge (Exhibit B1F/1). The [Plaintiff] was observed to have good hygiene (Exhibit B9F/18). She showed normal thought content, normal motor activity, and an appropriate affect (Exhibit B9F/18). During August 2017, the [Plaintiff] reported family stress, but noted she was coping better, without over depression (Exhibit B9F/7). During September 2017, the [Plaintiff] showed good hygiene and was described as both content and happy evidencing normal motor activity, consistent mood, and normal speech (Exhibit B9F/12). She noted her mood was okay, but admitted at times she was easily angered by other people (Exhibit B9F/5). During October 2017, the [Plaintiff] reported seeing her counselor once a month to talk about her anger issues (Exhibit B9F/3). She admitted that she was noncompliance with prescribed medications, forgetting to take her medications (Exhibit B9F/3). The [Plaintiff] showed clear speech, normal thought processes, normal associations, and logical thought content (Exhibit B9F/3). She was depressed and anxious, but was oriented with no impairment to her memory (Exhibit B9F/3). During November 2017, the [Plaintiff] reported her medications were not working, noting she felt anxious and did not want to be around people (Exhibit B9F/1). She reported she did not get along with people (Exhibit B9F/1). The [Plaintiff] showed no delusions, but was depressed and anxious with a flat

affect (Exhibit B9F/1). Despite her breakthrough symptoms, she showed no impairment to memory or judgment and evidenced no suicidal or homicidal ideation (Exhibit B9F/1). During December 2017, the [Plaintiff] showed clear speech, despite feelings of depression, anxiety, anger, and irritability (Exhibit B10F/67). She was oriented despite impairment to her memory and showed intact judgment (Exhibit B10F/67).

During January 2018, the [Plaintiff] maintained clear speech and showed logical thought processes, despite depression, anxiety, and irritability (Exhibit B10F/65). While she had some [impairment] to her memory, she maintained an average fund of knowledge and reported no suicidal or homicidal ideation (Exhibit B10F/65). During February 2018, the [Plaintiff] reported some paranoia; however, she showed normal thought processes during her treatment session (Exhibit B10F/63). There was some impairment to her memory, but she was observed to be oriented (Exhibit B10F/63). In March 2018, the [Plaintiff] noted her medications were effective and her mood was stable (Exhibit B10F/58). The [Plaintiff] evidenced some symptoms of schizophrenia; however, she was described as well compensated and was not observed to be attending to internal stimuli (Exhibit B11F/32). In April 2018, the [Plaintiff]'s symptoms and mood were stable with medications and she reported sleeping and eating well, endorsing no suicidal or homicidal ideation (Exhibit B10F/53). In May 2018, the [Plaintiff] noted she was frustrated with medication changes (Exhibit B12F/16). In April 2018, she reported some sleeping issues; however, at that time, she noted lapses in her mental medications (Exhibit B10F/42). In August after restarting medication, she reported sleeping better (Exhibit B10F/37). During September 2018, she was stable with her current medications (Exhibit 10F/32). In October 2018, she reported some issues with sleeping; however, by November 2018, she was again stable with the current medication regimen, reporting she was sleeping and eating well (Exhibit B10F/21). She reported no hallucinations and no suicidal/homicidal ideation (Exhibit B10F/21). In December 2018, the [Plaintiff] reported anger and agitation, as well as some paranoia in public (Exhibit B10F/15). Upon examination, she showed no suicidal/homicidal ideation, evidenced no psychosis, and was observed to be in no acute distress (Exhibit B10F/16). The [Plaintiff] maintained normal motor activity, had a normal memory, and normal insight and judgment (Exhibit B10F/16-17).

During January 2019, the [Plaintiff] was observed to be in no acute distress (Exhibit B10F/10). She was oriented with normal mood and affect and was observed to be well groomed, with normal memory and thought content (Exhibit B10F/10-11). During February 2019, the [Plaintiff] reported anxiety, depression, and crying, with sleep issues, admitting she needed to get back on her Seroquel medication (Exhibit B10F/3). She noted her symptoms of depression and insomnia were both intermittent (Exhibit B10F/3). She was prescribed [Lamictal] and Prazosin (Exhibit B10F/3). The [Plaintiff] showed no tics or abnormalities in motor activity and was both alert and oriented (Exhibit B10F/4). Despite her reports of depression and anxiety, she showed normal mood and affect, was well groomed, maintained normal speech, attention, thought content, and memory (Exhibit B10F/5). The

[Plaintiff] was able to complete normal serial 7s and she showed normal abstract thinking with normal insight and judgment (Exhibit B10F/5).

(Tr. 28–30).

## C. The ALJ's Decision[1]

The ALJ found that Plaintiff last met the insured status requirement on December 31, 2018 and has not engaged in substantial gainful activity since November 2, 2016, her alleged onset date of disability.  (Tr. 20).   The ALJ determined that Plaintiff suffered from the following severe mental impairments: an anxiety disorder; a depressive disorder; a bipolar disorder; a posttraumatic stress disorder (PTSD); and a schizoaffective disorder.  (*Id.*).  The ALJ, however, determined that none of Plaintiff's impairments, either singly or in combination, meet or medically equal a listed impairment.  (Tr. 22).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the [Plaintiff] would be precluded from climbing ladders, ropes, and scaffolds. She could have occasional exposure to concentrate pulmonary irritants, such as fumes, odors, dusts, and gases. The [Plaintiff] could have no more than occasional exposure to extreme cold, extreme heat, and humidity. The [Plaintiff] should not work at unprotected heights or around dangerous machinery. She could occasionally crawl. The [Plaintiff] could perform simple, routine, repetitive tasks in a setting without a fast production rate pace and without strict production quotas. She could make simple work[-] related decisions with few, if any, changes to the work setting or job duties. The [Plaintiff] could have occasional interaction with coworkers and supervisors, but could not perform tandem or shared tasks. She could have occasional interaction with the

---

[1] ALJ Sanders applied principles of *res judicata* and reviewed the record in accordance with the Sixth Circuit's decision in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997,) and *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990).  She found that ALJ Hartranft's April 20, 2016 decision, which covered a distinct time period, was *res judicata* and there was no basis to reopen Plaintiff's prior applications; therefore, ALJ Sanders addressed only the unadjudicated period beginning on November 2, 2016. (Tr. 18–19). In adjudicating Plaintiff's subsequent disability claim for the unadjudicated period, ALJ Sanders acknowledged she was bound to consider certain findings made by ALJ Hartranft in her prior decision. ALJ Sanders did not adopt the prior residual functional capacity, finding the medical evidence of record supports additional physical and mental limitations, resulting in a more restrictive overall residual functional capacity.  (Tr. 19). Plaintiff does not allege that ALJ Sanders erred in applying principles of *res judicata* when evaluating her DIB and SSI claims for the unadjudicated period.

general public, but not in a customer service capacity.

(Tr. 24).  When discussing the impact of Plaintiff's mental health impairments as to her RFC, the

ALJ determined:

> While the [Plaintiff] reports ongoing mental health symptoms, it should be noted the record supports her symptoms were generally well managed when she was compliant with prescribed treatment, including counseling and medications. The record supports increased breakthrough symptoms during periods of noncompliance. While she reports concentration, memory, and focus issues, the record supports only intermittent abnormalities in memory, noting the record does indicate the [Plaintiff] possesses normal thought processes, remains oriented, and shows normal memory during the majority of her treatment sessions. Further, despite her reports of confusion, she maintains full custody of her minor children, is able to manage her medical care, including her appointments, and engages in normal routine activities. Even when noncompliant with medication, the [Plaintiff] has not required emergency treatment on a routine basis for her symptom exacerbation nor has she required inpatient hospitalization for periods of mental instability.

> The undersigned has appropriately considered the [Plaintiff]'s combination of mental conditions and associated symptoms when reasonably reducing the [Plaintiff] to the performance of work at all exertional levels noting the [Plaintiff] could perform simple, routine, repetitive tasks in a setting without a fast production rate pace and without strict production quotas; could make simple work related decisions with few, if any, changes to the work setting or job duties; could have occasional interaction with coworkers and supervisors, but could not perform tandem or shared tasks; and could have occasional interaction with the general public, but not in a customer service capacity.

(Tr. 30).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements

concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely

consistent with the medical evidence and other evidence and other evidence in the record for the

reasons explained in this decision."  (Tr. 32).

Relying on the vocational expert's testimony, the ALJ concluded that even though Plaintiff

is unable to perform her past relevant work as a nurse's assistant, there are other representative

medium exertion, unskilled occupations in the national economy that Plaintiff could perform such

as hand packager, a store laborer, and a stock clerk. (Tr. 34–35). She therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act, since November 2, 2016. (Tr. 35).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to adequately weigh the opinion of Nurse Practitioner Katelyn Boldon ("NP Boldon") and generally mischaracterized the mental impairment opinion evidence. (Doc. 15 at 13–21). The Court finds this argument meritless.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in a case file. *Id.* Because Plaintiff's application was filed after March 27, 2017, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017). Those regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id.* Still, if an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive

factors[.]" §§ 404.1520c(b)(3); 416.920c(b)(3). In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each medical opinion individually. §§ 404.1520c(b)(1); 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id.*

Here, Plaintiff contends that the ALJ did not give a reasonable explanation when she afforded NP Boldon's opinion "partial weight." (Doc. 15 at 13–21). The Court disagrees. The ALJ "read and considered the mental functional capacity assessment" prepared by NP Boldon:

> The assessment was completed by the [Plaintiff]'s nurse practitioner. She found moderate to extreme limitations in the activities within the areas of mental health functioning. She further assessed the [Plaintiff] was able to manage her own funds. The undersigned finds the opinion that the [Plaintiff] was able to manage her own funds persuasive and consistent with the evidence of record. The record supported no cognitive deficits and the [Plaintiff], while having a limited education, was found to have an average fund of knowledge. Further, she self-reported she had no issues managing her own funds (Exhibit B5E). The undersigned finds the checkbox limits less persuasive. The limitations are somewhat consistent with the totality of the evidence of record. The record does support breakthrough symptoms, worse during periods of medicinal noncompliance. However, the record supports less severe symptoms, noting the [Plaintiff] showed stable mental functioning with treatment, including medication compliance (Exhibit B10F/21, 32, 53, 58). . . . Therefore, the undersigned overall finds the forms partially persuasive.

(Tr. 33). The ALJ explicitly stated that she found NP Boldon's opinion not completely supported by, or consistent with, the administrative record and then described the evidence that led her to that conclusion. In this way, the ALJ explained how the supportability and consistency factors were considered. That is all the regulations require. *See* 20 C.F.R. § 416.920c(b)(2).

The Undersigned further finds that the ALJ's supportability and consistency analyses are supported by substantial evidence. First, the ALJ found NP Boldon's "opinion that [Plaintiff] was able to manage her own funds persuasive and consistent with the evidence of record." (Tr. 33). The record indeed reflects, and the Commissioner highlights that, "Plaintiff even self-reported []

she had no issues managing her own funds." (*See* Tr. 285–86 (Plaintiff's own Function Report, wherein she asserts that she is able to pay her bills, handle a savings account, and that her "ability to handle money [has not] changed" since her conditions began)). While the ALJ found this portion of the opinion "persuasive and consistent[,]" she found the remainder of NP Boldon's opinion not supported by, or consistent with, the Plaintiff's medical records.

NP Boldon further opined that Plaintiff suffered from "moderate to extreme limitations in the activities within the areas of mental health functioning." (Tr. 33). The ALJ, however, found these "checkbox limits less persuasive[,]" and only "somewhat consistent with the totality of the evidence of record." (Tr. 33). Specifically, the ALJ determined "[t]he record supported no cognitive deficits and the claimant, while having a limited education, was found to have an average fund of knowledge." (*Id.*).

Upon review, the Court finds concludes that the record sufficiently supports the ALJ's determination. (*See* Tr. 324–44, 517, 534, 540, 546, 552, 557, 563, 568, 573, 592, 594, 596 (recognizing Plaintiff's "logical" thought content, "unimpaired" judgment and "not impaired" memory)). Another indicator that the ALJ properly conducted the mandated supportability and consistency analyses, is her determination that "the record supports less severe symptoms, [as] the claimant showed stable mental functioning with treatment, including medication compliance." (Doc. 33). This conclusion, too, enjoys record support. (*See* Tr. 550, 561, 582, 587 (showing Plaintiff was "stable with current medications" and that any "current signs and symptoms will be reduced through the use of appropriate psychiatric meds"). For these reasons, the Court finds that the ALJ's supportability and consistency analysis was supported by substantial evidence. Further, given this analysis, the Court finds Plaintiff's argument that the ALJ "mischaracterized" medical evidence in affording NP Boldon's opinion "partial weight," is similarly without merit. *See Her*

*v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached.").

Plaintiff also argues that the ALJ erred in discounting NP Boldon's opinion citing Plaintiff's noncompliance with her prescribed medications as well as her activities of daily living. (Doc. 15 at 17–20).  Specifically, Plaintiff takes issue with the ALJ relying on these occurrences to craft her RFC, arguing that any such determination is not supported by substantial evidence. (*Id.*).  Again, the Court disagrees.

First, regarding Plaintiff's noncompliance with her prescribed medications, as discussed above, the ALJ's conclusions have record support.  (*See* Tr. 550, 561, 582, 587 (showing Plaintiff was "stable with current medications" and that any "current signs and symptoms will be reduced through the use of appropriate psychiatric meds").  Accordingly, "there is significant evidence in the record[,] [which] the ALJ addresses[,] that establishes Plaintiff has been compliant with her medication in recent times and that there are improvements in her symptoms and functioning with compliance." *Sander v. Saul*, No. 19-cv-12475, 2020 WL 5761025, at *5 (E.D. Mich. Sept. 25, 2020); *see also Murray v. Comm'r of Soc. Sec.*, No. 08-14366, 2009 WL 1856538, at *3 (E.D. Mich. 2009) (finding it "significant" that the claimant's "symptoms of depression, anxiety and ADD were controlled with medications").  And this is not a circumstance where the ALJ based her entire evaluation of NP Boldon's opinion on Plaintiff's non-compliance.  As evidenced by the foregoing analysis, Plaintiff's non-compliance was only one factor, among many considered, which led the ALJ to afford NP Boldon's opinion "partial weight."  *See id*. ("[T]he ALJ properly pointed to substantial evidence in the record that showed Plaintiff experienced significant periods

of medication compliance and improvements in her symptoms as a result of that medication compliance.").

Second, regarding Plaintiff's activities of daily living, the Court finds that the ALJ reasonably considered these activities in deciding to afford the opinion of NP Boldon "partial weight." Here, the ALJ found that:

> the [Plaintiff] maintaining primary custody of her children, independently caring for her personal needs, preparing meals, performing chores, and managing her household, as well as being able to go shopping in stores and use public transportation, suggest her symptoms are not as significant as the checkbox forms denote.

(Tr. 33). Despite Plaintiff's protest otherwise, this consideration was appropriate. In fact, "[a]n ALJ not only is permitted to consider a claimant's level of daily activities in assessing [her] credibility, but is generally required to do so." *Kyle v. Comm'r of Soc. Sec.*, No. 1:12-CV-748, 2013 WL 5925777, at *8 (S.D. Ohio Oct. 31, 2013). As the Commissioner's brief illustrates, these contentions were supported by the record. (*See* Tr. 49–50, 282–89 (showing Plaintiff maintained primary custody of her children, independently cared for her personal needs, occasionally prepared meals, and preformed household chores); *see also* Tr. 52–53, 282–89 (showing Plaintiff occasionally shopped in stores, and used public transportation)). Ultimately, Plaintiff's range of activities supports the ALJ's determination that her symptoms were not as severe as indicated in NP Boldon's opinion. (Tr. 430–32); *see also Hummel v. Comm'r of Soc. Sec.*, No. 2:16-cv-937, 2018 WL 1373869, at *3 (S.D. Ohio Mar. 19, 2018) (finding that the ALJ did not err in concluding that claimant's "social functioning defects are inconsistent with [his] activities of daily living"). Also, as with her consideration of Plaintiff's non-compliance, the ALJ did not base her entire evaluation of NP Boldon's opinion on Plaintiff's activities of daily living. These activities were merely one factor, among many, that the ALJ considered in evaluating the opinion.

Given this disposition, the Court need not address the Commissioner's harmless error assertion. (Doc. 17 at 8 (arguing that if there was a procedural violation, it was harmless)).

## IV. CONCLUSION

Based on the foregoing, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

IT IS SO ORDERED.


Date:  May 19, 2021                    /s/ Kimberly A. Jolson
                                       KIMBERLY A. JOLSON
                                       UNITED STATES MAGISTRATE JUDGE